**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LISA OWSLEY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01328-SRC |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Lisa Owsley's request for judicial review,

under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying

Owsley's applications for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and

42 U.S.C. §§ 1381, *et seq*.  The Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Owsley filed her applications for DIB and SSI on April 7, 2015, and April 16, 2015,

respectively.  Tr. 192-93, 194-202.  Owsley previously filed for disability benefits and an

Administrative Law Judge ("ALJ") denied her applications in a decision dated February 5, 2015.

Tr. 14, 71-92.  Her applications at issue in this case were initially denied on July 28, 2015.  Tr.

13, 127-133.  Owsley asked for a hearing before an ALJ on September 2, 2015, and a hearing

was held on May 10, 2017.  Tr. 13, 33-70, 134-35.  The ALJ denied Owsley's applications in a

---

[1] After this suit was filed, Saul was confirmed as the Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Saul for Deputy Commissioner Nancy A. Berryhill as the Defendant in this suit.

decision dated November 1, 2017.  Tr. 10-27.  On July 3, 2018, the Appeals Council denied

Owsley's request for review.  Tr. 1-6.  As such, the ALJ's decision stands as the final decision of

the Commissioner.

## II.    DECISION OF THE ALJ

The ALJ determined that Owsley meets the insured status requirements of the Social

Security Act through December 31, 2015, and that Owsley has not engaged in substantial gainful

activity since February 6, 2015, the alleged onset date.  Tr. 16.  The ALJ found Owsley has

severe impairments of bipolar disorder, panic disorder without agoraphobia, post-traumatic stress

disorder (PTSD), chronic obstructive pulmonary disorder (COPD), mild degenerative disc bulges

at L4-L5 and L5-S1, obesity, and hypothyroidism.  The ALJ found that no impairment or

combination of impairments met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 16, 17.  After considering the

entire record, the ALJ determined Owsley has the residual functional capacity ("RFC") to

perform sedentary work with the following limitations.  Tr. 19-20.  She can lift up to 10 pounds

occasionally.  *Id*.  She can stand and walk for about two hours and sit for up to six hours in an

eight-hour workday, with normal breaks  *Id*.  She can occasionally climb ramps and stairs, but

can never climb ladders, ropes, or scaffolds.  *Id*.  She can occasionally balance and occasionally

stoop and crouch but can never kneel or crawl.  *Id*.  She should avoid exposure to irritants such

as fumes, odors, dusts, gases, and poorly ventilated areas, and should avoid unprotected heights

and exposure to hazardous machinery.  *Id*.  Her work is limited to simple, routine, and repetitive

tasks.  *Id.*  She should have no interaction with the public and only occasional interaction with

co-workers and supervisors.  *Id*.  The ALJ found that Owsley is unable to perform any past

relevant work but that jobs exist in significant numbers in the national economy that Owsley can

perform including hand packer and assembler.  Tr. 25-27.  Thus, the ALJ concluded that a

finding of "not disabled" was appropriate.  Tr. 27.

Owsley appeals, challenging the ALJ's decision in three respects.  First, Owsley claims

that the ALJ improperly excluded evidence from the record pursuant to the agency's "5-day

rule," arguing that the 5-day rule is inconsistent with the Social Security Act.  Second, Owsley

challenges the ALJ's application of the 5-day rule in this case, arguing that the excluded

evidence should have been admitted because Owsley informed the ALJ about the evidence at

least five days before her hearing.  Finally, Owsley challenges the ALJ's determination of her

residual functional capacity, arguing a lack of substantial evidence to support the

Commissioner's decision.

III.    **LEGAL STANDARD**

A disability is defined as the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his

physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at §

1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the

claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the

claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant

is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for

*providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those

determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not

be "reverse[d] merely because substantial evidence also exists in the record that would have

supported a contrary outcome, or because [the court] would have decided the case differently."

*KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## IV. DISCUSSION

### A. The 5-Day Rule is a Valid Exercise of the Commissioner's Rulemaking Authority.

Owsley first challenges the decision of the ALJ to exclude from the record certain

medical records that Owsley's representative submitted after her hearing. The ALJ excluded the

records pursuant to 20 C.F.R. § 404.935 and 20 C.F.R. § 416.1435. These regulations,[2] known

as the "5-day rule" provide as follows:

> (a) When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.
>
> (b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

---

[2] 20 C.F.R. § 404.935 applies to DIB and 20 C.F.R. § 416.1435 applies to SSI, but the provisions are identical. Since Owsley applied for both DIB and SSI, both provisions are applicable here.

6

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause; or

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935; 20 C.F.R. § 416.1435. In his written decision, the ALJ noted that "[t]he records from Dr. Melrose that were submitted late will not be admitted into the record because the 5-day rule was not followed." Tr. 13. The excluded medical records pertain to Owsley's treatment in 2014 and 2015 by Dr. Erica Melrose. Tr. 894-924. Owsley's attorney submitted the excluded records to the ALJ on June 2, 2017, nearly a month after her hearing on May 10, 2017. Tr. 895.

Owsley does not claim that any of the enumerated exceptions to the 5-day rule apply here. *See* 20 C.F.R. § 404.935(b); 20 C.F.R. § 416.1435(b). Instead, Owsley challenges the validity of the 5-day rule itself. Owsley argues that the 5-day rule is "inconsistent with the statute" and, therefore, not a valid exercise of the Commissioner's rulemaking authority. Doc. 15 at 2-4. Owsley cites two sections of the Social Security Act that, she contends, preclude the 5-day rule. First, Owsley cites 42 U.S.C. § 405(b)(1), which provides in relevant part:

In the course of any hearing, investigation, or other proceeding, the Commissioner may administer oaths and affirmations, examine witnesses, and receive evidence. Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure.

Owsley also cites 42 U.S.C. § 423(d)(5)(B):

In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a

disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

Owsley argues that the 5-day rule is incompatible with 42 U.S.C. § 405(b)(1) because the statute provides that "[e]vidence may be received at any hearing before the Commissioner" and further provides that the Commissioner shall render a decision "on the basis of evidence adduced at the hearing." Doc. 15 at 4-5. Because the 5-day rule requires evidence to be submitted *before* the hearing, Owsley argues that it is inconsistent with the statutory language. *Id.* at 4-6. Owsley argues that 42 U.S.C. § 423(d)(5)(B) also precludes the 5-day rule because that statute requires the Commissioner to "consider all evidence in [an] individual's case record" when making a disability determination. Doc. 15 at 5-6. Because the 5-day rule permits an ALJ to exclude late-submitted evidence, Owsley argues that it violates the "all evidence" requirement of § 423(d)(5)(B). Doc. 15 at 5-6.

In response, the Commissioner argues that the agency's interpretation of these statutes is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and that the 5-day rule is a reasonable policy choice permissible under the Social Security Act. Doc. 21 at 5-6. Further, the Commissioner notes that the Act expressly confers upon him

> full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and [to] adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a).

The Court finds that it need not address whether the 5-day rule is a valid exercise of the

Commissioner's rulemaking authority conferred by 42 U.S.C. § 405(a) because the 5-day rule is

"not inconsistent with the provisions of" the statute.

As noted above, 42 U.S.C. § 405(b)(1) provides that "[e]vidence may be received at any hearing

before the Commissioner" and further provides that the Commissioner shall render a decision

"on the basis of evidence adduced at the hearing."  Owsley argues that the 5-day rule is

unambiguously incompatible with these provisions of the statute.  Doc. 15 at 4-6.  The Court

disagrees.  First, the 5-day rule applies only to *written* evidence.  20 C.F.R. § 404.935(a); 20

C.F.R. § 416.1435(a).  Accordingly, the rule is no barrier to a claimant who seeks to offer

witness testimony at her hearing.  Further, the 5-day rule does not preclude a claimant from

submitting new written evidence at the hearing—it only requires that the claimant "inform" the

ALJ that she intends to do so at least five business days in advance.  *Id.*  At least one federal

court has previously found that the 5-day rule does not conflict with 42 U.S.C. § 405(b)(1).  *See*

*Nino v. Berryhill*, No. 3-18-CV-82-CRW-SBJ, 2019 WL 3491929, at *1 (S.D. Iowa Apr. 11,

2019) ("the statutory language does not suggest claimants have an unfettered right to provide

written evidence").  The Court agrees.

42 U.S.C. § 423(d)(5)(B) provides that the Commissioner "shall consider all evidence

available in [an] individual's case record" when making a disability determination.  Again, the

Court finds that this statute does not unambiguously conflict with the 5-day rule.  First, unlike §

405(b)(1), § 423(d)(5)(B) does not relate specifically to procedures at the administrative hearing

level, but rather to the agency's initial determination on a claimant's application for benefits.

*See generally* 42 U.S.C. § 423.  Owsley makes no attempt to explain why this section's

requirements for the initial determination stage preclude the 5-day rule at the administrative

hearing stage.  Further, the statute expressly contemplates that "all evidence available" may be something less than *all evidence*.  The statute requires the Commissioner to "make every reasonable effort to obtain…all medical evidence, including diagnostic tests, necessary in order to properly make such determination." *Id.*  By including the "every reasonable effort" language, Congress expressly permitted the agency—even at the initial determination stage—to render a decision based on a less-than-complete record.  The statute does not define "every reasonable effort."  That silence, coupled with Congress's express delegation of authority to the Commissioner "to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same," entitles the Commissioner's interpretation of the statute to deference here.  *Chevron*, 467 U.S. at 843 ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").  Accordingly, the Court finds that the 5-day rule is a valid exercise of the Commissioner's rulemaking authority.

> **B.    The ALJ's Exclusion of Evidence Under the 5-Day Rule was not an Abuse of Discretion.**

Alternatively, Owsley argues that—even if the 5-day rule is valid—the ALJ erred in his application of the 5-day rule in the present case.  In relevant part, the rule provides:

> Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence….

20 C.F.R. § 404.935(a); 20 C.F.R. § 416.1435(a).  Owsley argues that the ALJ improperly excluded the additional records from Dr. Melrose because her representative informed the ALJ about these records more than five business days before the hearing.

Owsley argues that she informed the ALJ about the *specific* excluded medical records by notifying him *generally* that Dr. Melrose was one of her treating physicians. Owsley notes seven instances in the record where she listed Dr. Melrose as one of her treatment providers. For example, in her disability application dated May 15, 2015, Owsley listed Dr. Melrose as her "Gynacoligist" [sic] and noted that Dr. Melrose performed a hysterectomy in December 2014 and provided treatment for cervical cancer in January 2015. Tr. 263. Owsley also listed Dr. Melrose on Form SSA-3368 (Disability Report – Adult), noting that Dr. Melrose treated her for "OBGYN issues" between 2014 and 2015. Tr. 225-26. On May 5, 2016, Owsley submitted a Recent Medical Treatment form, noting (without further detail) that she was treated or examined by Dr. Melrose on November 10, 2015. Tr. 291.

To be clear, Owsley does not assert that she specifically notified the ALJ at least five business days before the hearing that additional records from Dr. Melrose were forthcoming. Instead, Owsley argues that she "timely informed the ALJ of the existence" of the excluded records by merely noting in her disability forms that Dr. Melrose treated her. Doc. 15 at 6-7. Assuming without deciding that a claimant could ever satisfy the "inform" requirement of the 5-day rule by merely identifying a treatment provider, the Court finds that Owsley did not do so here.

First, this is not a case where the claimant identified a treatment provider but no medical records from that provider were received. The record includes at least 60 pages of medical records pertaining to Owsley's treatment by Dr. Melrose in 2014 and 2015 (Tr. 361-77, 481-504, 517-38), including some pages that apparently overlap with the excluded records. *Compare* Tr. 482 with Tr. 896. Thus, even if merely listing Dr. Melrose as a provider could be considered enough to put the ALJ on notice that *some* medical records from Dr. Melrose existed, the ALJ

11

had no reasonable way of knowing that *particular, additional* records were not yet in the file.  In

her reply brief, Owsley apparently suggests that the ALJ should have cross-referenced the dates

she listed for treatment by Dr. Melrose with the dates of the corresponding medical records to

find any discrepancies and thereby identify missing material.  Doc. 24 at 4-5.  The Court doubts

that the Commissioner intended, in adopting the 5-day rule, to put so onerous a burden on ALJs.

*See Harris v. Velichkov*, 860 F.Supp 2d 970, 979-80 (D. Neb. 2012) ("One of the bedrock

principles of statutory and regulatory interpretation is to avoid interpretations that would produce

absurd results.") (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)).  But the

Court need not reach that question in this case, because Owsley affirmatively represented to the

ALJ that no records from Dr. Melrose were missing.

 During her hearing on May 10, 2017, the ALJ asked if Owsley had "any additional

evidence to submit into the record?"  Tr. 37.  Owsley's attorney responded:

> **No, Your Honor.**  There are some – there is a request out for pulmonologist
> records, but it's a recent exam, and we're not going to ask for additional time to
> get it in.[3]

*Id.* (emphasis added).  Thus, when given the express opportunity at her hearing to identify

evidence missing from the record, Owsley failed either to inform the ALJ about the existence of

missing records from Dr. Melrose or to notify the ALJ that any request for such records was

outstanding.  Instead, Owsley's attorney affirmatively represented that she did not have any

additional evidence to submit into the record.  Tr. 37.

---

[3] The ALJ subsequently admitted records from Owsley's pulmonologist, Dr. Howard Goldberg, despite noting that
Owsley "did not follow the 5-day rule in regards to these records."  Tr. 13.  Thus, the ALJ applied the 5-day rule
leniently in this case by admitting evidence that Plaintiff did not disclose until the hearing (a "zero day rule").
Plaintiff first notified the ALJ about the additional records from Dr. Melrose—dating from 2014 and 2015—on June
2, 2017.  Tr. 895.

The 5-day rule requires a claimant to either submit or "inform [the ALJ] about" all written evidence no later than five business days before the hearing. 20 C.F.R. § 404.935(a); 20 C.F.R. § 416.1435(a). Assuming without deciding that Owsley listing Dr. Melrose as a treatment provider created any duty of inquiry on the part of the ALJ, the Court finds that any such duty was extinguished here when the ALJ inquired about additional evidence at the hearing and Owsley failed to inform him that records from Dr. Melrose were missing. Accordingly, the Court finds that Owsley neither submitted nor informed the ALJ about the excluded records within five business days of the hearing.

In these circumstances, the 5-day rule gives the ALJ discretion to admit or exclude the late-submitted evidence. *Id.* ("If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence…."). Accordingly, the Court reviews the ALJ's decision to exclude the additional records from Dr. Melrose for abuse of discretion. *See Passmore v. Astrue*, 533 F.3d 658, 665-66 (8th Cir. 2008) (where agency regulation confers discretion on the ALJ, court's review is for abuse of discretion). The Court finds no abuse of discretion here. The ALJ noted that he was excluding the late-submitted records from Dr. Melrose "because the 5-day rule was not followed" and because "the records were from 2014 and 2015 and, as such, the claimant and/or representative should have known about the records at least 5 business days prior to the hearing." Tr. 13. The Court finds these determinations reasonable under the circumstances. *See* 20 C.F.R. § 404.935(a); 20 C.F.R. § 416.1435(a) ("Each party must make *every effort* to ensure that the administrative law judge receives all of the evidence….") (emphasis added). Accordingly, the Court affirms the decision of the Commissioner. *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir. 2006) (under abuse

of discretion standard, court must affirm "if a reasonable person *could* have reached a similar decision").

> **C.    Substantial Evidence Supports the ALJ's Determination of Residual Functional Capacity.**

Finally, Owsley challenges the ALJ's residual functional capacity (RFC) determination in Step 4 of the sequential analysis.  As noted above, the ALJ found Owsley's RFC limited to:

> sedentary work…except that she can lift up to 10 pounds occasionally.  She can stand and walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks.  She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  She can occasionally balance and occasionally stoop and crouch but can never kneel or crawl.  She should avoid exposure to irritants such as fumes, odors, dusts, gases and poorly ventilated areas.  She should avoid unprotected heights and exposure to hazardous machinery.  The claimant's work is limited to simple, routine, and repetitive tasks.  She should have no interaction with the public and only occasional interaction with co-workers and supervisors.

Tr. 19-20.  Owsley argues that the RFC determination is not supported by substantial evidence because the ALJ omitted from the RFC any functional limitations related to her irritable bowel syndrome (IBS).  Doc. 15 at 8.

In her applications for DIB and SSI, Owsley alleged disability related to IBS.  Tr. 16.  In Step 2 of the sequential analysis, the ALJ considered Owsley's alleged disability due to IBS and determined that any related impairment was "non-severe."  *Id.*  An impairment is not severe if "it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §404.1522, § 416.922.  Further, an impairment is not severe unless it lasted or was expected to last for at least twelve months.  *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014).  The ALJ found that "the evidence does not show an impairment of the gastrointestinal system that would have more than a minimal effect on the claimant's ability to carry out basic work activities for a period of 12 months or more."  *Id.*

14

The Court finds that substantial record evidence supports the ALJ's determination that Owsley's IBS was not severe. Nearly a year prior to Owsley's alleged disability onset—in June 2014—she consulted Dr. Michael Cleary, M.D. and Nurse Practitioner Kim Dickherber regarding loose stools and diarrhea occurring from 3 to 10 times per day. Tr. 312, 437-39. However, only a month later in July 2014 Owsley reported that her loose stools and diarrhea had resolved. Tr. 346, 424-25. After Owsley's alleged disability onset in February 2015, she regularly reported that she had no incontinence, diarrhea, or loose stools. Tr. 408-09, 621, 627, 646, 673, 705. In March 2017, Owsley reported to Dr. Manasa Melireddy, M.D. that she had loose bowel movements for the previous six months. Tr. 646. However, two months later at her hearing in May 2017, Owsley testified that she experienced an episode of IBS only "once or twice a month" or "three on a bad time." Tr. 57. Further, Owsley testified at her hearing that she receives no medical treatment for her IBS. Tr. 57-58. In fact, there is no indication that any of Owsley's physicians provided any significant treatment for IBS during the relevant period, i.e., after her alleged onset of disability. *See Milam v Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (failure to seek medical treatment for a condition weighs against a claimant's subjectively reported limitations).

In sum, the Court finds substantial record evidence supporting the ALJ's determination that Owsley's IBS did not cause significant functional limitations "for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Thus, the Court affirms the ALJ's finding that Owsley's IBS was non-severe. *Turpin*, 750 F.3d at 994. By definition, a non-severe impairment "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1522, § 416.922. Thus, Owsley's argument that the ALJ erred by excluding restrictions related to her IBS from the RFC determination lacks merit.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff Lisa Owsley's Complaint is **DISMISSED, with prejudice**.  A separate judgment will

accompany this Memorandum and Order.

So Ordered this 2nd day of March, 2020.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**